**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :
IN RE:                                   :        <u>MEMORANDUM DECISION</u>
                                         :            <u>AND ORDER</u>
TERRORIST ATTACKS ON                     :        03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2001                       :
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This document relates to:

     *King, et al. v. Islamic Republic of Iran*, No. 22-cv-5193 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

     On June 23, 2023, Plaintiff Manu Dhingra moved for a default judgement against the Islamic Republic of Iran as to liability and for a partial final default judgment seeking pain and suffering and economic damages. (Pl.'s Mot. for Final J. as to Liab. & for Partial Final J. for Damages, ECF No. 9152.[1]) Because Plaintiff was not a United States national on September 11, 2001, he cannot bring claims against Iran under 28 U.S.C. § 1605A(c). His motion, therefore, requires this Court to consider a novel issue in this litigation: whether non-United States nationals can hold Iran accountable under New York tort law for allegedly supporting al Qaeda and proximately causing the 9/11 attacks.

     Before the Court is Magistrate Judge Sarah Netburn's January 5, 2024 Report and Recommendation (the "Report"), recommending that this Court grant Plaintiff's motion in part and recommending the amount in which he be awarded damages. (Report, ECF No. 9506, at 16.) Magistrate Judge Netburn advised the parties that failure to file timely objections to the Report

---

[1] Unless otherwise indicated, all ECF citations included herein refer to documents filed on the 9/11 multidistrict litigation docket. *See In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN).

would constitute a waiver of those objections on appeal. (*Id.* at 17.) No party has filed any objections.

## I.   LEGAL STANDARDS

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

Having reviewed the Report for clear error and finding none, this Court ADOPTS Magistrate Judge Netburn's Report in full.

## II.   MAGISTRATE JUDGE NETBURN CORRECTLY FOUND THAT THIS COURT HAS JURISDICTION OVER IRAN

Owing to Iran's status as a foreign sovereign, it is "'presumptively immune from the jurisdiction of United States courts,' unless a specific exception" enumerated in the Foreign Sovereign Immunities Act ("FSIA") applies. *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 640 (S.D.N.Y. 2018) (cleaned up) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). Magistrate Judge Netburn correctly found that this Court has jurisdiction over Iran pursuant to the FSIA exception set forth in 28 U.S.C. § 1605B(b).

### A.  Subject Matter Jurisdiction

Plaintiff argues that this Court has jurisdiction over Iran under the sovereign immunity exception provided by 28 U.S.C. § 1605B(b). (Mem. of Law in Support of Pl.'s Mot. for Final J.

as to Liab. & for Partial Final J. for Damages ("Mem."), ECF No. 9155, at 15–16.) The exception

states,

> A foreign state shall not be immune from the jurisdiction of the courts of the United
> States in any case in which money damages are sought against a foreign state for
> physical injury to person or property or death occurring in the United States and
> caused by—
> (1) an act of international terrorism in the United States; and
> (2) a tortious act or acts of the foreign state, or of any official, employee, or agent
> of that foreign state while acting within the scope of his or her office, employment,
> or agency, regardless where the tortious act or acts of the foreign state occurred.

28 U.S.C. § 1605B(b).

As Magistrate Judge Netburn correctly noted, the analysis of most of the elements of this

exception is relatively straightforward.  Plaintiff is seeking money damages from Iran for injuries

he suffered in the United States.  (Report at 6 (internal citations omitted).)  His injuries were caused

by the 9/11 attacks, which were, unquestionably, acts of international terrorism.  (*Id.* (internal

citations omitted).)

The key focus, then, is whether Plaintiff's injuries were "caused" by Iran's "tortious act or

acts."  28 U.S.C. § 1605B(b).  As Magistrate Judge Netburn pointed out, this Court has already

determined that in the FSIA context, "'a tortious act' includes the 'knowing or deliberately

indifferent provision of material support to terrorists' . . . ."  (Report at 6 (quoting *In re Terrorist

Attacks on Sept. 11, 2001*, 298 F. Supp. 3d at 643).)  FSIA's causation requirement, meanwhile,

"adopts the traditional test for proximate causation," namely, "some reasonable connection

between the act or omission of the defendant and the damage which the plaintiff has suffered."

*In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d at 645 (quoting *Owens v. Republic of

Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017), *vacated in part on other grounds sub nom. Opati v.

Republic of Sudan*, 590 U.S. 418 (2020)).  Proximate causation requires that "the defendant's

conduct . . . 'be a "substantial factor" in the sequence of events that led to the plaintiff's injury,'"

and that plaintiff's injury be "'reasonably foreseeable or anticipated as a natural consequence of'
the defendant's actions." *Id.* at 646 (quoting *Owens*, 864 F.3d at 794).

Earlier in this litigation, this Court found Iran liable for facilitating the 9/11 attacks under
a separate FSIA exception. *See In re Terrorist Attacks on Sept. 11, 2001*, Nos. 03 MDL 1570
(GBD), 03 Civ. 9848 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011); *see also* Report at
2–4 (summarizing the factual findings in the 2011 decision). As Magistrate Judge Netburn found,
though "courts cannot take judicial notice of factual findings made in another case and rely on
them 'for the truth of the matter asserted'" (Report at 4 (quoting *Int'l Star Class Yacht Racing
Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))), in the FSIA context, courts
can take judicial notice of decisions and "'review the underlying evidence,' thereby obviating the
need for its 're-presentment.'" (*Id.* at 4–5 (cleaned up) (quoting *Lee v. Islamic Republic of Iran*,
518 F. Supp. 3d 475, 480 (D.D.C. 2021)).) Having reviewed the underlying evidence from this
Court's 2011 decision (*see* Exs. 1–40 to Pls.' Mem. of Law in Support of Mot. for Default J.,
ECF Nos. 2431-1 to -12, 2432-1 to -16, 2433-1 to -11, 2473-1 to -4), this Court agrees with
Magistrate Judge Netburn's conclusion that Iran's tortious acts—specifically, its provision of
material support to al Qaeda—proximately caused the 9/11 attacks, and Plaintiff's injuries by
extension. (*See* Report at 6–7.) Therefore, Plaintiff has established the applicability of the FSIA
exception set forth in 28 U.S.C. § 1605B(b), and this Court has subject-matter jurisdiction under
28 U.S.C. § 1330(a).[2]

**B. Personal Jurisdiction**

Once a court determines that subject-matter jurisdiction exists over a foreign state under
28 U.S.C. § 1330(a), personal jurisdiction is straightforward, simply requiring valid service of

---

[2] Because 28 U.S.C. § 1330(a) only allows for nonjury civil actions, this Court strikes the jury demand
contained in Plaintiff's complaint. (*See* Report at 7 n.3.)

process under 28 U.S.C. § 1608.  *See* 28 U.S.C. § 1330(b).  Magistrate Judge Netburn correctly found that Plaintiff achieved service via diplomatic channels as set forth in 28 U.S.C. § 1608(a)(4). (*See* Report at 7 (citing Aff. of Serv., ECF No. 8887).)   Therefore, this Court has personal jurisdiction over Iran.

### III.   MAGISTRATE JUDGE NETBURN PROPERLY NOTED THAT IRAN DEFAULTED

Plaintiff's effectuation of service triggered a sixty-day period for Iran to serve "an answer or other responsive pleading to the complaint." 28 U.S.C. § 1608(d).  Iran failed to do so, and the Clerk of Court entered a Certificate of Default against Iran on March 15, 2023.  (*See* Clerk's Certificate of Default, ECF No. 8928.)  Thus, Magistrate Judge Netburn did not err in finding that Iran defaulted in this action.  (*See* Report at 8.)

### IV.   MAGISTRATE JUDGE NETBURN DID NOT ERR IN FINDING IRAN LIABLE TO PLAINTIFF

#### A.  Foreign States Are Subject to State Tort Claims

As a threshold matter, this Court must determine whether plaintiffs can assert state tort claims against foreign states once a sovereign immunity exception is established.  Once a foreign state is shed of its presumptive immunity under the FSIA, "it is subject to the same rules of liability as a private party. . . . [A] foreign state, if found ineligible for immunity, must answer for its conduct just as any actor would."  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 114 (2022).  "[T]he FSIA was never 'intended to affect the substantive law determining the liability of a foreign state or instrumentality' deemed amenable to suit."  *Id.* at 113–14 (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 620 (1983)).  Thus, Magistrate Judge Netburn did not err in determining that Iran is subject to suit for state tort claims, including assault and battery.  (*See* Report at 10.)

**B. Plaintiff Can Assert His Assault and Battery Claims Against Iran**

This Court must decide whether Plaintiff can properly assert his assault and battery claims against Iran now, even though he did not include these causes of action in his complaint. (*Compare* Mem. at 12–14 (asserting assault and battery claims), *with* Am. Compl., *Burnett v. Islamic Republic of Iran*, No. 15-cv-9903 (GBD) (SN) (S.D.N.Y. Feb. 8, 2016), ECF No. 53, at 1082–88 (not asserting assault and battery claims).[3])

The crux of default is a defendant's admission of the "factual allegations" laid out in the complaint. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004))). "[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . . ." *Mahuiztl-Atilano v. Pio Rest., LLC*, No. 18 Civ. 3689 (AJN), 2020 WL 6820749, at *2 (S.D.N.Y. Nov. 20, 2020) (internal citation omitted).

In the FSIA context, "[w]hile [plaintiffs] d[o] not have to identify the specific source of law in [their] complaint," they must "do so at an appropriate time in the litigation." *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 840 (D.C. Cir. 2009). Plaintiff has certainly asserted assault and battery claims in the instant motion. (*See* Mem. at 12–14; 17–19.) This Court agrees with Magistrate Judge Netburn's conclusion that because (a) Plaintiff's complaint alleges facts which "cogently charge[] Iran with legal responsibility for his injuries," and (b) Plaintiff has

---

[3] *King* plaintiffs, including Dhingra, incorporated the causes of action set forth in the *Burnett* amended complaint by reference. *See* Compl., *King v. Islamic Republic of Iran*, No. 22-cv-5193 (GBD) (SN) (S.D.N.Y. June 21, 2022), ECF No. 1, ¶¶ 3–4.

clearly identified assault and battery causes of action in the instant motion, this Court may consider

Plaintiff's assault and battery claims against Iran.[4] (*See* Report at 9–10.)

## C. Choice-of-Law Principles Militate in Favor of Applying New York Law

When MDL courts preside over state law claims, they apply the choice-of-law rules

"that would have been applied by a state court in the jurisdiction in which a case was filed."

*Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993). Because Plaintiff filed his action in this

District, this Court looks to New York's choice-of-law rules. (*See* Report at 10.) As Magistrate

Judge Netburn noted, this analysis boils down to an evaluation of the "place of the tort" (*see id.* at

10–11)—*i.e.*, "the jurisdiction where the 'last event necessary' to make the defendant liable

occurred." *In re Sept. 11th Litig.*, 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007) (quoting *Schultz v.*

*Boy Scouts of Am.*, 65 N.Y.2d 189, 192 (1985)). Here, because Plaintiff was injured at the World

Trade Center, Magistrate Judge Netburn did not err in applying New York law to Plaintiff's

claims.[5] (*See* Report at 11.)

---

[4] This Court DENIES Plaintiff's request that it rule that the survival cause of action in his complaint necessarily includes claims for assault and battery. (*See* Report at 8 n.4; Mem. at 12–14.)

[5] On a more granular level, New York's choice-of-law analysis for tort actions is rooted in an evaluation of the jurisdiction with "the greatest interest in the litigation." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Schultz*, 491 N.Y.S.2d at 90). Within this framework, courts determine whether the torts alleged are categorized as "conduct-regulating" or "loss-allocating," each with a separate choice-of-law test. (*See* Op. & Order, ECF No. 9287, at 3–5.) Magistrate Judge Netburn correctly noted that while assault and battery have characteristics of both conduct-regulating and loss-allocating torts (*see* Report at 10–11 (citing *K.T. v. Dash*, 37 A.D.3d 107, 113 (1st Dep't 2006))), as applied to the facts of this litigation, the distinction between classes of torts is without a difference, as each test results in the place of the tort controlling the choice-of-law outcome. (*See id.* at 11.) *Schultz* states that "when the defendant's [tortious] conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of wrong is considered to be the place where the last event necessary to make the actor liable occurred." 65 N.Y.2d at 195. Some courts, however, have questioned the propriety of this statement in the context of conduct-regulating torts, particularly because *Schultz* was a loss-allocation case. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50 (2d Cir. 2013); *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 399 (S.D.N.Y. 2018). Instead, such cases focus on the site of the tortious conduct. *See Licci*, 739 F.3d at 49; *Holborn*, 304 F. Supp. 3d at 400. Nonetheless, this does not pose a barrier to this Court's finding that New York law applies, as it finds Iran liable for assault and battery under aiding-and-abetting principles—Iran aided and abetted the 9/11 hijackers, whose tortious conduct, as applied to Plaintiff, occurred in New York. *See infra* Section IV.D. Moreover, this Court agrees with Judge

**D. Iran Is Liable to Plaintiff**

Magistrate Judge Netburn did not err in finding Iran liable to Plaintiff for assault and battery under aiding-and-abetting principles.[6]  Under New York law, "[b]attery is the unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonable person would find offensive," while "[a]ssault involves putting a person in fear of a battery." *Rivera v. State*, 34 N.Y.3d 383, 389 (2019) (internal citation omitted).  Such contact can occur "by means of an instrumentality." *See Aberbach v. Biomedical Tissue Servs., Ltd.*, 48 A.D.3d 716, 718 (2d Dep't 2008).  "Aiding-[and-]abetting includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *see also Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (N.Y. Sup. Ct. 1994) (applying the *Halberstam* factors in an assault case).

This Court has little trouble finding that the al Qaeda hijackers committed assault and battery against Plaintiff. (*See* Report at 12–13.)  And, based on the evidence that Plaintiff has proffered—which Iran has admitted is true by virtue of its default—this Court agrees with Magistrate Judge Netburn's conclusion that Iran both knew of and substantially assisted al Qaeda's attacks on the United States. (*See id.* at 13.)  This Court adjudges Iran liable to Plaintiff.

---

Hellerstein that, in 9/11 litigation involving the attacks at the World Trade Center, "New York has the greater interest in having its law applied," because "New York was the target of the terrorists" and the attacks "had special effect in this jurisdiction." *In re Sept. 11th Litig.*, 494 F. Supp. 2d at 239–40.

[6] As this Court finds Iran liable under aiding-and-abetting principles, it declines to address the additional theories of liability argued by Plaintiff. (*See* Report at 11 n.5.)

## V.   MAGISTRATE JUDGE NETBURN AWARDED APPROPRIATE DAMAGE AMOUNTS

### A. Personal Injury Damages

On February 7, 2020, Magistrate Judge Netburn established a framework to award personal injury damages to individual plaintiffs who had sustained injuries during the 9/11 attacks, which this Court adopted on February 14, 2020.  (R. & R. ("Personal Injury Report"), ECF No. 5879, *adopted by* Mem. Decision & Order, ECF No. 5946.)  This framework outlined the personal injury awards for individual plaintiffs and is as follows:

| Category of Injury | Pain and Suffering Damages Award |
|---|---|
| Significant | $5,000,000.00 |
| Severe | $7,000,000.00 |
| Devastating | $10,000,000.00 |

(*Id.* at 6.)  In the Personal Injury Report, Magistrate Judge Netburn defined and categorized what type of injuries the Court will typically consider to be "significant," "severe," or "devastating," and she also reserved the Court's discretion to award further upward departures in what appear to be exceptional circumstances.  (*Id.* at 6–9.)  This Court agrees with Magistrate Judge Netburn that considerations of fairness dictate that the preexisting personal injury damages framework applies to non-U.S. nationals as well.  (*See* Report at 14.)

Magistrate Judge Netburn did not err in her recommendation that this Court classify Plaintiff's injuries as "devastating."  (*See* Report at 15–16.)  Plaintiff submitted declarations and exhibits, extensively detailing the injuries he sustained during the 9/11 attacks.  (*See* Exs. A–C to Goldman Decl., ECF Nos. 9154-1 to -7.)  The Report accurately describes the relevant injuries as

9

"devastating" and confirms that the medical records reflect these injuries. (*See* Report at 15–16.) Therefore, Dhingra is awarded $10,000,000.00 in pain and suffering damages.

### B. Economic Damages

Magistrate Judge Netburn properly recommended awarding Plaintiff economic damages. (*See* Report at 16.) As Plaintiff's request for economic damages is adequately supported by the declaration and report of economist John E. Beauzile (*see* Ex. D to Goldman Decl., ECF Nos. 9154-9 to -10), this Court awards him $255,582.00 in economic damages.

### C. Prejudgment Interest and Further Damages Applications

Additionally, Magistrate Judge Netburn appropriately found that Plaintiff should be awarded prejudgment interest of 4.96 percent per annum, compounded annually. (Report at 16.) Prejudgment interest will run from September 11, 2001 until the date of judgment for Plaintiff's personal injury damages. (*Id.*) For Plaintiff's economic damages, prejudgment interest will run from September 1, 2022 until the date of judgment. (*Id.*)

All *King* plaintiffs, including Dhingra, are permitted to submit further damages applications, including for punitive damages, consistent with this Court's future rulings. (*See id.*)

## VI.   CONCLUSION

Plaintiffs' Motion for Final Judgment as to Liability and Partial Final Judgment for Damages (ECF No. 9152) is GRANTED IN PART. It is:

**ORDERED** that Plaintiff's Motion for Final Judgment as to Liability is GRANTED and final judgment on liability is entered against the Islamic Republic of Iran and in favor of Plaintiff; and it is

**ORDERED** that Plaintiff is awarded $10,000,000.00 in personal injury damages; and it is

**ORDERED** that Plaintiff is awarded $255,582.00 in economic damages; and it is

**ORDERED** that prejudgment interest is awarded and to be calculated at a rate of 4.96 percent per annum as set forth *supra* in Section V.C, all interest compounded annually over the same period; and it is

**ORDERED** that to the extent he has not done so already, Plaintiff may submit in later stages applications for punitive, economic, and/or other damages awards; and it is

**ORDERED** that all *King* plaintiffs who were not previously awarded damages may submit in later stages applications for punitive, economic, and/or other damages awards.

The Clerk of Court is directed to close the motion at ECF No. 9152 and enter partial final default judgment for Plaintiff.

Dated:  New York, New York
        March 26, 2024

SO ORDERED.

GEORGE B. DANIELS
United States District Judge