IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001

Case No. 1:03-md-01570-GBD-SN

*This document relates to:*

*Ashton et al. v. Al Qaeda, and the Republic of Sudan et al.*, Case No. 02 Civ. 6977; *Nolan et al. v. Republic of the Sudan*, Case No. 20 Civ. 10720; *Parker et al. v. Republic of the Sudan*, Case No. 20 Civ. 10657; *Betru et al. v. The Republic of Sudan*, Case No. 20 Civ. 10615; *Clarke et al. v. The Republic of the Sudan*, Case No. 23 Civ. 07736; *Burnett et al. v. Al Baraka Inv. & Dev. Corp., et al.,* Case No. 03 Civ. 9849; *Federal Insurance Co., et al. v. Al Qaida, et al.,* Case No. 03 Civ. 6978; *Continental Casualty Co., et al. v. Al Qaeda, et al.,* Case No. 04 Civ. 5970; *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 04 Civ. 1922; *Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.,* Case No. 18 Civ. 12114; *DeRubbio, et al. v. Islamic Republic of Iran*, Case No. 18 Civ. 05306; *Morris, et al. v. Islamic Republic of Iran*, Case No. 18 Civ. 05321; *Bernaerts, et al. v. Islamic Republic of Iran*, Case No. 19 Civ. 11865; *Aronow v. Republic of Sudan*, Case No. 20-cv-7733; *King, et al. v. Islamic Republic of Iran*, Case No. 22 Civ. 05193; *Strauss v. Islamic Republic of Iran*, Case No. 22 Civ 10823; *Perry et al. v. Republic of the Sudan*, Case No. 23 Civ. 07391; *DiNardo et al. v. Republic of the Sudan*, Case No. 23 Civ. 07328; *Adler et al. v. Republic of Sudan*, Case No. 23 Civ. 07164; *Fennelly, et al. v. Islamic Republic of Iran*, Case No. 23 Civ. 10824; *Kone, et al. v. Islamic Republic of Iran*, Case No. 23 Civ. 05790; *Kelly, et al. v. Islamic Republic of Iran, et al.*, Case No. 23 Civ. 7283; *Lopez, et al. v. Islamic Republic of Iran, et al.*, Case No. 23 Civ. 08305; *Jelnek, et al. v. Islamic Republic of Iran*, Case No. 24 Civ. 05520; *Lum, et al. v. Islamic Republic of Iran*, Case No. 24 Civ. 07824.

**MEMORANDUM OF LAW IN SUPPORT OF
SUDAN'S MOTION FOR CERTIFICATION OF AN
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

WHITE & CASE
701 Thirteenth Street, NW
Washington, DC 20005

January 29, 2025

*Counsel for the Republic of the Sudan*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 3

THIS COURT SHOULD CERTIFY ITS ORDER DENYING SUDAN'S SOVEREIGN
IMMUNITY FOR IMMEDIATE INTERLOCUTORY APPEAL ................................................. 3

    A.    Certifying the Interlocutory Order May Materially Advance the
           Termination of the Litigation ................................................................................. 3

    B.    The Order Raises Controlling Issues of Law ........................................................ 5

    C.    Substantial Grounds for a Difference of Opinion Exist ......................................... 6

    D.    Sudan Brings this Motion in Reasonable Time ..................................................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Ashton v. Al Qaeda Islamic Army*,
  298 F. Supp. 3d 631 (S.D.N.Y. 2018) ............................................................................8

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  581 U.S. 170 (2017) ......................................................................................................4, 6

*Bostock v Clayton County*,
  590 U.S. 644 (2020) ......................................................................................................6

*Burrage v. United States*,
  571 U.S. 204 (2014) ......................................................................................................6

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) ...........................................................................3, 7

*Comcast Corp. v. Nat'l Ass'n of African-American Owned Media*,
  589 U.S. 327 (2020) ......................................................................................................6

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
  476 F. Supp. 2d 305 (S.D.N.Y. 2007) ...........................................................................5, 6

*Crossland Fed. Sav. Bank v. Tulip Realty Assocs.*,
  No. 92-cv-1632, 1995 WL 87358 (E.D.N.Y. Feb. 16, 1995) ........................................10

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ......................................................................................................4

*FG Hemisphere Assocs. v. Dem. Rep. of Congo*,
  447 F.3d 835 (D.C. Cir. 2006) .......................................................................................9, 10

*Figueiredo Ferraz Consultoria E Engenharia De Projeto Ltda v. Republic of
  Peru*,
  No. 08-cv-492, 2009 WL 5177977 (S.D.N.Y. Dec. 15, 2009) ......................................3

*Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp.*,
  No. 20-cv-3929, 2021 WL 1852038 (S.D.N.Y. May 7, 2021) ......................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
  117 F.4th 13 (2d Cir. 2024) ...........................................................................................1, 2, 4, 9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
  Amministrazione Straordinaria*,
  921 F.2d 21 (2d Cir. 1990) ............................................................................................3, 5

*Mei Xing Yu v. Hasaki Restaurant, Inc.*,
   874 F.3d 94, 98 (2d Cir. 2017)......................................................................................................3

*Owens v. Republic of Sudan*,
   864 F.3d 751 (D.C. Cir. 2017)......................................................................................................9

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)............................................................................................................7

*Starkis v. Ollie's Bargain Outlet*,
   560 F. App'x 27 (2d Cir. 2014) ....................................................................................................6

*Tantaros v. Fox News Network, LLC.*,
   465 F. Supp. 3d 385 (S.D.N.Y. 2020)..........................................................................................3

*Transp. Workers Union of Am., Local 100 v. N.Y.C. Transit Auth.*,
   358 F. Supp. 2d 347 (S.D.N.Y. 2005)..........................................................................................4

*Verlinden B.V. v. Cent. Bank of Nigeria*,
   461 U.S. 480 (1983).....................................................................................................................4

**STATUTES AND RULES**

28 U.S.C. § 1291..............................................................................................................................1

28 U.S.C. § 1292................................................................................................................... *passim*

28 U.S.C. § 1330..............................................................................................................................5

28 U.S.C. § 1605(a)(7)..........................................................................................................1, 2, 6, 8

28 U.S.C. § 1605A................................................................................................................ *passim*

28 U.S.C. § 1605B....................................................................................................................1, 2, 6

**OTHER AUTHORITIES**

Rescission of Determination Regarding Sudan,
   85 Fed. Reg. 82,565 (Dec. 18, 2020)..........................................................................................4

Certification of Rescission of the Determination Regarding the Government of
   Sudan, Oct. 26, 2020,
   https://trumpwhitehouse.archives.gov/presidential-actions/certification-
   rescission-determination-regarding-government-sudan/ ............................................................4

Nat'l Comm'n on Terrorist Attacks Upon the United States,
   The 9/11 Comm'n Rep. (2004),
   https://www.govinfo.gov/content/pkg/GPO-911REPORT/pdf/GPO-
   911REPORT.pdf.........................................................................................................................7

**PRELIMINARY STATEMENT**

Sudan condemns the 9/11 Attacks and expresses its sincere sympathy to the victims. Sudan, however, maintains its categorical denial of the allegations in the Amended Complaints that Sudan had any involvement in those attacks. Sudan moved to dismiss the Amended Complaints, asserting its foreign sovereign immunity and arguing that, among other things, the Amended Complaints fail to allege facts that establish any causal link between Sudan's alleged conduct in the early-to-mid-1990s and the 9/11 Attacks, particularly given Sudan's expulsion of Osama Bin Laden from Sudan in 1996.

In its Memorandum Decision and Order granting in part and denying in part Sudan's motion to dismiss (the "Order"), this Court held that Plaintiffs' allegations were sufficient for the Court to exercise subject-matter jurisdiction over these actions under the terrorism exceptions to foreign sovereign immunity under 28 U.S.C. § 1605(a)(7) (repealed), § 1605B, and § 1605A. *See* Order 7-18, ECF No. 9278. Sudan asserted its sovereign right to immediate interlocutory appeal from this Court's Order finding subject-matter jurisdiction under § 1605(a)(7) and § 1605B, timely noticing its appeal under 28 U.S.C. § 1291 and the collateral-order doctrine.

Plaintiffs moved to dismiss Sudan's appeal in the Second Circuit for lack of appellate jurisdiction on the basis that § 1605A(f) precludes an immediate appeal under the collateral-order doctrine from a denial of sovereign immunity under § 1605(a)(7) and § 1605B in any action also "brought under" § 1605A. After holding oral argument, the Second Circuit granted Plaintiffs' motion and dismissed Sudan's appeal, holding "that § 1605A(f) eliminates all interlocutory appeals under the collateral-order doctrine from orders falling within its scope, including Sudan's proposed appeal." *In re: Terrorist Attacks on Sept. 11, 2001*, 117 F.4th 13, 17-18 (2d Cir. 2024). Even though in these actions Plaintiffs invoked exceptions to sovereign immunity other than § 1605A (i.e., § 1605(a)(7) and § 1605B) and Sudan's appeal was limited to those other exceptions

to immunity, the Second Circuit reasoned that because it found Plaintiffs' actions were also "brought under" § 1605A, § 1605A(f) "restricts [its] review of nonfinal '*orders*,' rather than specific issues or rulings within those orders." *Id.* at 22-23 (emphasis in original). The Second Circuit concluded that it does not have appellate jurisdiction to review any aspect of this Court's Order "in the absence of such certification" under § 1292(b). *Id.* at 27.

Given the Second Circuit's decision, Sudan now files this motion requesting certification of the Order under § 1292(b) and, specifically, certification of the following issues: (1) whether Plaintiffs' allegations are sufficient to satisfy the exceptions to sovereign immunity in § 1605(a)(7), § 1605B(b) and § 1605A(a); (2) whether Plaintiffs' § 1605A actions are timely under § 1605A(b) and § 1083(c)(3) of the 2008 National Defense Authorization Act ("2008 NDAA"); and (3) whether Plaintiffs' allegations are sufficient to state the claims asserted in the Amended Complaints.

Certification of the Order is warranted because interlocutory review will best serve the interests of judicial economy. The Order addresses foundational questions of sovereign immunity and subject-matter jurisdiction that, if decided differently by the Second Circuit, may terminate these actions entirely. Certification also is appropriate because the issues Sudan seeks to appeal are exclusively questions of law and subject to substantial grounds for a difference of opinion. Sudan has acted in reasonable time in bringing this motion following the issuance of the Second Circuit's mandate, particularly in light of the ongoing internal conflict and strife in Sudan. Immediate appellate review of the Order would not prejudice Plaintiffs because Sudan is fully committed to fulfilling its discovery obligations to the best of its ability pending any appeal.

# ARGUMENT

## THIS COURT SHOULD CERTIFY ITS ORDER DENYING SUDAN'S SOVEREIGN IMMUNITY FOR IMMEDIATE INTERLOCUTORY APPEAL

Certification of the Court's Order under § 1292(b) is entirely appropriate because an immediate appeal may spare the Court and the parties otherwise protracted litigation over several years. *See Mei Xing Yu v. Hasaki Restaurant, Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) (granting petition for interlocutory review under § 1292(b)). Indeed, all relevant factors favor certification here: (1) an immediate appeal may materially advance the termination of the litigation; (2) the Court's Order involves controlling questions of law; and (3) substantial grounds for a difference of opinion concerning the Court's Order exist. *See* 28 U.S.C. § 1292(b); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 23 (2d Cir. 1990); *see also Figueiredo Ferraz Consultoria E Engenharia De Projeto Ltda v. Republic of Peru*, No. 08-cv-492, 2009 WL 5177977, at *2 (S.D.N.Y. Dec. 15, 2009) (stating these considerations "should be viewed together as . . . a direction to consider the probable gains and losses of immediate appeal") (citation omitted).

### A. Certifying the Interlocutory Order May Materially Advance the Termination of the Litigation

An immediate appeal of the Court's Order may end this litigation completely, which would spare the Court and the parties potentially years of further litigation proceedings. Specifically, reversal of the Order holding Plaintiffs' allegations sufficient to abrogate Sudan's sovereign immunity "would end this case and would materially advance the ultimate termination of the litigation." *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020). Sudan's request for certification therefore satisfies the most important factor under § 1292(b): "whether an immediate appeal would materially advance the termination of the litigation." *See Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (stating that "[c]ourts 'place particular weight'" on this factor) (quoting *Transp. Workers Union of Am., Local*

*100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)).

Immediate appellate review of this Court's abrogation of Sudan's sovereign immunity is particularly important here, given the debilitating crisis Sudan is facing at home and because foreign sovereign immunity is meant "to give [foreign states] some protection from the inconvenience of suit as a gesture of comity." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 479 (2003); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 179 (2017) (stating the "basic objective" of foreign sovereign immunity is "to free a foreign sovereign from *suit*" and courts should "reach a decision about immunity as near to the outset of the case as is reasonably possible") (emphasis in original) (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983)).

While the Second Circuit held that § 1605A(f) limits Sudan's options for immediate appeal in these actions to § 1292(b), § 1605A(f) applies here only because of Sudan's *former* designation as a state sponsor of terrorism. The United States rescinded Sudan's designation years ago as a result of Sudan's willingness to resolve historical terrorism claims against it and "assurances that it [would] not support acts of international terrorism in the future." *See* Certification of Rescission of the Determination Regarding the Government of Sudan, Oct. 26, 2020, https://trumpwhitehouse.archives.gov/presidential-actions/certification-rescission-determination-regarding-government-sudan/; *see also* Rescission of Determination Regarding Sudan, 85 Fed. Reg. 82,565 (Dec. 18, 2020). Moreover, the deterrence rationale underlying § 1605A(f)'s enactment is no longer applicable to Sudan where Sudan has already demonstrated that it would not support acts of international terrorism — and, indeed, has not — and its state sponsor of terrorism designation has been rescinded. *See In re Terrorist Attacks*, 117 F.4th at 28 (stating "Congress's later amendments to the exception, including § 1605A(f)'s appellate bar, were

–4–

'designed to *deter future* state-sponsored terrorism'") (emphasis added) (quoting 154 Cong. Rec. S54 (daily ed. Jan. 22, 2008) (statement of Sen. Frank Lautenberg)).

In light of Sudan's resolution of historical terrorism claims against it, the removal of Sudan from the State Sponsors of Terrorism List, and the internal conflict presently consuming Sudan, Sudan should be accorded the same grace and comity as other foreign states in U.S. litigation seeking to resolve the fundamental threshold question of their foreign sovereign immunity from jurisdiction and suit at the earliest possible opportunity in the litigation.

**B.    The Order Raises Controlling Issues of Law**

The questions that Sudan seeks to appeal here — questions of foreign sovereign immunity and subject-matter jurisdiction — are plainly significant controlling questions of law.  Reversal of the Court's Order on these legal questions "would terminate the action," because Sudan would be immune and the Court would lack subject-matter jurisdiction.  *See* 28 U.S.C. 1330(a); *Klinghoffer*, 921 F.2d at 24 (holding issue was controlling issue of law because reversal by the Second Circuit "would terminate the action").  Indeed, the Second Circuit has recognized that issues related to subject-matter jurisdiction are precisely the types of "controlling" issues appropriate for interlocutory review.  *See, e.g.*, *Klinghoffer*, 921 F.2d at 24 (citation omitted); *see also Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp.*, No. 20-cv-3929, 2021 WL 1852038, at *2 (S.D.N.Y. May 7, 2021) ("[T]he question of whether this Court has subject matter jurisdiction over the present actions is plainly a 'controlling' issue of law.") (citation omitted).

Moreover, the precise issues that would be reviewed on appeal here, including, for example, the proper causation standards and whether Plaintiffs may assert § 1605A as a basis for subject-matter jurisdiction, are "'pure' question[s] of law that the reviewing court could decide quickly and cleanly without having to study the record."  *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007); *see also Helmerich*, 581 U.S. at

187 (holding sufficiency of allegations to establish subject-matter jurisdiction poses a "purely" legal question). As such, these questions are entirely appropriate for certification under § 1292(b).

### C.     Substantial Grounds for a Difference of Opinion Exist

Substantial grounds for a difference of opinion exist on the legal issues addressed in the Court's Order that merit certification of the Order for interlocutory review. In particular, these issues either present "conflicting authority" or difficult questions "of first impression for the Second Circuit." *Consub Delaware*, 476 F. Supp. 2d at 309 (describing factors that determine whether substantial grounds for a difference of opinion exist) (quotation omitted).

Substantial grounds for a difference of opinion exist as to the appropriate standard for jurisdictional causation under the applicable exceptions to foreign sovereign immunity. Supreme Court precedent suggests, contrary to this Court's determination (Order at 9), that jurisdictional causation requires both but-for and proximate causation because but-for causation is the "default" rule of causation. *See Comcast Corp. v. Nat'l Ass'n of African-American Owned Media*, 589 U.S. 327, 332 (2020) ("This ancient and simple 'but-for' causation test . . . supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated . . . ."); *Bostock v Clayton County*, 590 U.S. 644, 655-56, 1739 (2020) (holding that phrases like "because of" require but-for causation). Indeed, numerous other courts have interpreted similar causation language in other statutes to require both forms of causation. *See, e.g.*, *Burrage v. United States*, 571 U.S. 204, 210 (2014) (equating "caused by" with "resulting from," which the Supreme Court held requires but-for causation); *Starkis v. Ollie's Bargain Outlet*, 560 F. App'x 27, 30 (2d Cir. 2014) (affirming plaintiff failed to establish requisite but-for-causation because defendant employer's adverse action was not "caused by" retaliation). Sudan had argued in its motion to dismiss that nothing in the text of the causation requirements in § 1605(a)(7), § 1605B or § 1605A suggests a deviation from this standard. Mot. to Dismiss 7-8, ECF No. 6575. This Court, however,

–6–

invoked precedent from other circuits that predates these Supreme Court precedents to hold that only proximate causation is required. Order at 9. Conflicting interpretations of statutory causation language and intervening Supreme Court precedent have created substantial grounds for a difference of opinion on this outcome-determinative question that should be clarified by the Second Circuit on immediate interlocutory appeal.

This Court's holding that Plaintiffs' allegations are sufficient to establish proximate cause sufficient to support a withdrawal of Sudan's sovereign immunity raises another "difficult" issue "of first impression for the Second Circuit." *See Capitol Records*, 972 F. Supp. 2d at 551 (noting that issues of first impression can satisfy the "difference of opinion" criterion). For example, in a case against a non-sovereign defendant, the Second Circuit in *Rothstein v. UBS* adopted a "direct relation" requirement for proximate causation in analyzing claims of support for terrorism, 708 F.3d 82, 91-92 (2d Cir. 2013), but the Second Circuit has not addressed whether a "direct relation" requirement should likewise be incorporated into the proximate cause analysis for jurisdiction under the FSIA's exceptions to immunity.

Requiring a showing of some "direct relation" for purposes of jurisdictional causation under the FSIA would result in a dismissal of Plaintiffs' claims here because Plaintiffs' geographically and temporally remote allegations against Sudan do not satisfy such a standard. Moreover, Plaintiffs' allegations are plainly contradicted by the 9/11 Commission Report's detailed findings, which show a causal break in Sudan's alleged dealings with al Qaeda after Sudan expelled bin Laden from Sudan in 1996, leaving him destitute, five years before the 9/11 attacks. *See* Nat'l Comm'n on Terrorist Attacks Upon the United States, The 9/11 Comm'n Rep. 62-65, 170 (2004), https://www.govinfo.gov/content/pkg/GPO-911REPORT/pdf/GPO-911REPORT.pdf ("When Bin Ladin left [Sudan] in 1996, it appears that the Sudanese government expropriated all

his assets: he left Sudan with practically nothing.").

This Court's dismissal of claims against the Saudi High Commission in this multidistrict litigation based on extremely similar allegations to those asserted against Sudan underscores that the question whether such allegations are sufficient to abrogate foreign sovereign immunity is another "difficult" issue that should be resolved by the Second Circuit. *See Ashton v. Al Qaeda Islamic Army*, 298 F. Supp. 3d 631, 659 (S.D.N.Y. 2018) ("Plaintiffs' allegations are conclusory, largely boilerplate and concern conduct too temporally and geographically remote from the 9/11 Attacks to have proximately caused Plaintiffs' injuries.").

Whether Plaintiffs' invocation of § 1605A through the "related action" provision in § 1083(c)(3) of the 2008 NDAA was proper also presents an issue of first impression on which substantial grounds for a difference of opinion exist. Plaintiffs' original complaints, filed before 2008, alleged subject-matter jurisdiction over these actions based on the now-repealed § 1605(a)(7) and did not assert § 1605A as a basis for subject-matter jurisdiction. *See, e.g.*, *Ashton* Sixth Consolidated Master Complaint, *Ashton, v. Al Qaeda Islamic Army*, No. 02-cv-06977 (S.D.N.Y. Sept. 4, 2002), ECF No. 1463; Third Am. Compl. ¶ 2, *Burnett v. Al Baraka Inv. & Dev. Corp.*, No. 02-cv-1616 (D.D.C. Nov. 22, 2002), ECF No. 29. No Plaintiff invoked § 1605A as a basis for subject-matter jurisdiction by September 11, 2011, when the applicable 10-year statute of limitations for § 1605A actions expired. *See* § 1605A(b). Incredibly, no Plaintiff asserted § 1605A until December 21, 2018, when the *O'Neill* Plaintiffs filed a supplemental complaint asserting § 1605A for the first time. *O'Neill* Supp. Compl. ¶ 19, No. 18-cv-12114 (S.D.N.Y. Dec. 21, 2018), ECF No. 1. The remaining Plaintiffs did not assert § 1605A as a basis for subject-matter jurisdiction until 2020. *See, e.g.*, *Ashton* Compl. ¶ 4, ECF No. 6537; Consolidated Am. Compl. ¶ 8, ECF No. 6539. All Plaintiffs invoked the "related action" provision in § 1083(c)(3)

of the 2008 NDAA as justification for asserting § 1605A belatedly.  *See Ashton* Compl. ¶ 123; Consolidated Am. Compl. ¶ 215.  Whether Plaintiffs' reliance on § 1083(c)(3) was proper and their invocation of § 1605A in 2018 and 2020 was timely are issues of first impression that would benefit greatly from clarity from the Second Circuit.  Indeed, no court of appeals has addressed the proper interpretation of § 1083(c)(3) in any case involving Sudan.  *See, e.g.*, *In re Terrorist Attacks*, 117 F.4th at 24 (declining to consider Sudan's timeliness challenge as "premature" given application of § 1605A(f)); *Owens v. Republic of Sudan*, 864 F.3d 751, 804 (D.C. Cir. 2017) (declining to consider application of § 1083(c)(3)).

> D. **Sudan Brings this Motion in Reasonable Time**

As this Court is aware, Sudan has been in the throes of a devastating civil war for over a year and a half.  *See, e.g.*, Declan Walsh, *A Catastrophic Civil War in Sudan*, N.Y. Times (Aug. 15, 2024), https://www.nytimes.com/2024/08/15/briefing/sudan-civil-war.html; Ishaan Tharoor, *The world's 'worst crisis' is in Sudan*, Wash. Post (Dec. 4, 2024), https://www.washingtonpost.com/world/2024/12/04/sudan-hunger-crisis-civil-war-famine-starvation/.  Counsel for Sudan represented to this Court on November 6, 2024 that counsel had been having difficulty engaging with the appropriate Sudanese government representatives in Sudan because of the civil war.  ECF Nos. 10511, 10515.  Since then, counsel has been able to engage with appropriate Sudanese government representatives and has duly complied with this Court's November 21, 2024 order (ECF No. 10552) and filed the required authorization from its government representative (ECF No. 10569) and answers to Plaintiffs' Amended Complaints (ECF Nos. 10575 & 10576) on December 9, 2024.  Sudan also joined Plaintiffs in submitting a proposed discovery plan to this Court on January 24, 2025.  ECF No. 10675.  Notwithstanding the challenges presented by Sudan's ongoing civil war, Sudan has acted in reasonable time in bringing this motion.  *Cf. FG Hemisphere Assocs. v. Dem. Rep. of Congo*, 447 F.3d 835, 841 (D.C. Cir.

2006) (finding timing of motion to vacate under Rule 60(b)(1) reasonable where "the DRC was plainly hampered by its devastating civil war").

Moreover, Sudan is not seeking a stay of discovery and again is committed to participating diligently in the discovery process to the best of its ability. Joint Letter at 4, ECF No. 10675. Plaintiffs would therefore not suffer any prejudice if this Court certifies the Order for immediate appeal. *See, e.g.*, *Crossland Fed. Sav. Bank v. Tulip Realty Assocs.*, No. 92-cv-1632, 1995 WL 87358, at *3 (E.D.N.Y. Feb. 16, 1995) (granting motion for certification because "certification in th[e] case will not result in any significant prejudice"); *cf. FG Hemisphere*, 447 F.3d at 840 (holding there was "no danger of prejudice"). And, as discussed above, the Second Circuit's review of the Court's Order may materially advance the termination of these actions.

## CONCLUSION

For the foregoing reasons, Sudan respectfully submits that the Court should certify the Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: January 29, 2025
       Washington, DC

Respectfully submitted,

**WHITE & CASE**

/s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Claire A. DeLelle
Nicolle Kownacki (*pro hac vice*)
Celia A. McLaughlin
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:  + 1 202 626 3600
Facsimile:  + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
nkownacki@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*

## CERTIFICATE OF COMPLIANCE

This memorandum of law complies with the word-count limitations of Local Civil Rule 7.1(c) because it contains 2975 words.

January 29, 2025

                                                    /s/ *Christopher M. Curran*
                                                    Christopher M. Curran